UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE HUNTER #242663,

                  Plaintiff,                                Hon. Janet T. Neff

v.                                                  Case No. 1:17-cv-503

CARMEN PALMER, et al.,

                  Defendants.

_____/

## REPORT AND RECOMMENDATION

        This matter is before the Court on Defendants' Motion for Summary Judgment.   (ECF No. 50).   Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this action **dismissed**.

## BACKGROUND

        The following allegations are contained in Plaintiff's complaint.   (ECF No. 1).   On February 20, 2014, Plaintiff was transferred from the Lakeland Correctional Facility to the Michigan Reformatory (RMI).   Upon arrival at RMI, Plaintiff informed a nurse of "the pre-existing injuries to his left shoulder, left wrist, left knee, and left ankle."   Plaintiff also expressed to this nurse "his fear of being physically injured, while climbing onto and off the top bunk."   Plaintiff was nevertheless given a top bunk assignment.

        On February 23, 2014, Plaintiff "slipped" while climbing off his top bunk injuring his left upper extremity.   The following day, Plaintiff "showed" his injuries to Prison Counselor (PC) David Reed.   Plaintiff also expressed to Reed "his fear of fatally injuring himself, while climbing

-1-

onto and off the top bunk." Plaintiff reported to Reed that "his pre-existing injuries in combination with the very small and congested nature of the cell" made it difficult for him to safely climb up and down from the top bunk. Plaintiff requested that Reed transfer him to a bottom bunk and also suggested that prison officials "install ladders on the top bunks." Reed denied Plaintiff's request for a bottom bunk transfer and further indicated that installing ladders on beds was "not gonna happen." Later that day, Plaintiff "sent an Administrative Complaint" to Warden Carmen Palmer and Deputy Warden of Housing Gregory Skipper putting them on "notice" of his injuries and concerns. Plaintiff also requested that he be moved to a bottom bunk or that prison officials install ladders on the beds. Neither Palmer nor Skipper responded to Plaintiff's complaint.

Between February 24, 2014, and March 17, 2014, Plaintiff "fell several more times" while climbing up or down from his top bunk injuring his left knee and left upper extremity. On March 20, 2014, Plaintiff "slipped again" while climbing down from his bunk striking his head on the bed rail and concrete floor. Following this event, Plaintiff began experiencing swelling on his head, "a severe headache," and "sharp severe pains shooting down the back of his neck." Later that day, Plaintiff "showed" his injuries to PC Reed and requested that he be sent to "Health Services for urgent medical care." Reed denied Plaintiff's request. Again, later that same day, Plaintiff sent a request for medical treatment to Health Services. Plaintiff's request for treatment was "intentionally delayed and/or interfered with" by Registered Nurse Teri Byrne. Specifically, Byrne did not schedule Plaintiff to be examined until March 27, 2014, and, furthermore, deliberately scheduled Plaintiff to be examined by a nurse instead of a doctor.

On March 27, 2014, Plaintiff was examined by Registered Nurse Christy Jastifer. Plaintiff reported that he was experiencing severe headaches, sharp pain around his eyes and down his

neck, as well as a tingling sensation and numbness in his hands and fingers.   Jastifer concluded that Plaintiff's injuries were "nothing serious" and provided Plaintiff with pain medication.   Unsatisfied with Jastifer's diagnosis and treatment, Plaintiff "demanded to see the doctor."   Jastifer refused at which point Plaintiff "threatened to file a grievance against" her.   Plaintiff's condition "worsened over the following days."

On April 8, 2014, Plaintiff spoke with Registered Nurse Todd Lambart regarding Jastifer's refusal to provide him with appropriate treatment.   Lambart told Plaintiff that he "would look into the matter."   Lambart also instructed Plaintiff "to re-kite Health Services for follow up care."   On April 11, 2014, Plaintiff sent a "follow up care" request to Health Services, but "was never scheduled for medical treatment and/or follow up care."   On April 17, 2014, Plaintiff "sent another 'follow up care' kite to Health Services, but still never received a response."   That same day, Plaintiff sent an Administrative Complaint to Warden Palmer and Health Unit Manager (HUM) Bryan Dereen alleging that Lambart, Jastifer, and Byrne were "deliberately ignoring" his requests for medical treatment.   Neither Palmer nor Dereen responded to Plaintiff's complaint.

On May 1, 2014, Plaintiff again injured himself while climbing down from his bunk. Plaintiff brought this incident to the attention of PC Reed who promised to move Plaintiff to a lower bunk if he did not file a grievance about the matter.   Plaintiff agreed and on May 9, 2014, Reed ordered Plaintiff's cell mate to switch bunks so that Plaintiff could have the lower bunk.

Plaintiff initiated the present action on June 5, 2017, against Warden Palmer, Deputy Warden Skipper, PC Reed, HUM Dereen, RN Byrne, RN Jastifer, and RN Lambart.   While Plaintiff has articulated various, and often redundant, claims, such can be categorized as follows.   Plaintiff alleges that Defendants Reed, Skipper, and Palmer failed to protect him from the known and obvious

risk of danger he faced by being forced to climb up and down from a top bunk.   The Court interprets this as a claim that Plaintiff's conditions of confinement violated the Eighth Amendment.   Plaintiff also alleges that Defendants Reed, Palmer, Dereen, Byrne, Jastifer, and Lambart were deliberately indifferent to his need for medical treatment in violation of his Eighth Amendment rights.   Plaintiff next alleges that Defendants Skipper, Reed, Palmer, Dereen, Byrne, Jastifer, and Lambart ignored and disregarded his obvious need for medical treatment for unlawful retaliatory reasons in violation of his First Amendment rights.   Plaintiff also asserts various state law claims.

Defendants now move for relief on various grounds.   Defendants first argue that Plaintiff has failed to properly exhaust his administrative remedies.   Defendants next assert that they are entitled to qualified immunity.   Defendants also assert that Plaintiff has failed to state a claim upon which relief may be granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."   *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."   *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

-4-

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof  faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record

-5-

contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## **ANALYSIS**

### I.        **Exhaustion**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Prisoners are no longer required to demonstrate exhaustion in their complaints.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing.  *Id*.  With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).   In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

-6-

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody.   Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration."   Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P.   If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.*   The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V.   The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included."   *Id.* at ¶ R.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due.  *Id.* at ¶ BB.  If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III.  *Id.* at ¶ FF.  The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*

In support of their motion, Defendants have submitted copies of three grievances which Plaintiff pursued regarding the allegations in his complaint: (1) RMI-14-03-0718-27z; (2) RMI-14-04-0793-12E4; and (3) RMI-14-04-0943-28e.   Plaintiff has not asserted that he pursued any other

grievances through all three steps of the prison grievance process regarding the claims presently before the Court.

A.    Grievance RMI-14-03-0718-27z

Plaintiff initiated this grievance on March 20, 2014, against Defendants Palmer, Skipper, and Reed.  (ECF No. 67-1 at PageID.526).  Plaintiff alleged that Defendants "disregarded the serious nature of [his] complaints, and failed to take preventive measures to ensure [his] safety and well-being by installing ladders to provide a safe and reliable way to access the top bunk."  Plaintiff pursued this matter through all three steps of the grievance process.  (ECF No. 67-1 at PageID.526-32).  Accordingly, this grievance properly exhausts Plaintiff's claims that Defendants Palmer, Skipper, and Reed subjected him to unlawful conditions of confinement.

B.    Grievance RMI-14-04-0793-12E4

Plaintiff initiated this grievance on March 29, 2014, against Defendant Jastifer.  (ECF No. 67-1 at PageID.533).  Plaintiff alleges that on March 20, 2014, he injured himself while attempting to climb down from his top bunk.  Plaintiff alleges that he submitted a request for medical treatment and was examined by Defendant Jastifer on March 27, 2014.  Plaintiff further alleges, however, that Jastifer did not provide him with appropriate medical treatment and denied his request to be examined by a doctor.

Defendant Jastifer argues that she is entitled to relief because "Plaintiff failed to appeal this grievance to Step III."  (ECF No. 51 at PageID.212).  The Court disagrees as the evidence submitted by Defendant reveals that Plaintiff pursued this matter through all three steps of the grievance process.  (ECF No. 51 at PageID.383).  Accordingly, this grievance properly exhausts

-8-

Plaintiff's claim that Defendant Jastifer failed to provide him with appropriate medical treatment when she examined him on March 27, 2014.

      C.     Grievance RMI-14-04-0943-28e

      Plaintiff initiated this grievance on April 23, 2014, alleging that Defendants Lambart, Jastifer, Byrne, Dereen, and Palmer retaliated against him "by deliberately and intentionally ignoring [his] request for medical attention and the complete denial of access to medical care for [his] serious medical need."  (ECF 51-3 at PageID.375; ECF No. 67-1 at PageID.539).  Defendants assert that this grievance fails to properly exhaust any of Plaintiff's claims because this grievance was rejected as untimely and duplicative of grievance RMI-14-04-0793-12E4.  (ECF No. 67-1 at PageID.539-44). The Court is not persuaded.

      First, the finding of duplicativeness is unreasonable and unsupported by a plain reading of the two grievances.  In grievance RMI-14-04-0793-12E4, discussed immediately above, Plaintiff alleged that Defendant Jastifer failed to provide him with appropriate medical treatment on March 27, 2014.  In the present grievance, however, Plaintiff alleges retaliation based on a series of events occurring between March 20, 2014, and April 23, 2014.  The nature of the claims, as well as the time period applicable to each, is clearly distinct.

      As for the finding that this grievance was untimely, the Court finds such to be equally unreasonable.  In the present grievance, Plaintiff alleged a series of events beginning on March 20, 2014, and culminating on April 23, 2014, which led Petitioner to conclude that the lack of medical treatment he was experiencing was the product of unlawful retaliation.  Specifically, Plaintiff alleged that after failing to receive appropriate medical treatment following his March 20, 2014 injury, he spoke with Defendant Lambert on April 8, 2014.  Lambert allegedly instructed Plaintiff to again

-9-

request medical treatment.   Plaintiff submitted a health care request on April 11, 2014, but received no response.   Plaintiff then submitted yet another health care request on April 17, 2014, to which he received no response.   It was only after receiving no response to his April 17, 2014 request that Plaintiff concluded that he was the target of unlawful retaliation.   It was not unreasonable for Plaintiff to wait until April 23, 2017, to conclude that he was the target of retaliation.   Moreover, once making that determination his grievance was timely filed according to MDOC regulations.

In sum, Defendants have failed to meet their burden to demonstrate that this grievance does not properly exhaust the claims asserted therein.   Accordingly, this grievance properly exhausts Plaintiff's claim that, based upon events occurring between March 20, 2014, and April 23, 2014, Defendants Lambart, Jastifer, Byrne, Dereen, and Palmer retaliated against Plaintiff "by deliberately and intentionally ignoring [his] request for medical attention and the complete denial of access to medical care for [his] serious medical need."

To recap, for the reasons articulated above, the Court finds that Plaintiff has properly exhausted the following claims: (1) Defendants Palmer, Skipper, and Reed violated his Eighth Amendment rights by failing to install a ladder on his bed; (2) Defendant Jastifer failed to provide Plaintiff with appropriate medical treatment when she examined him on March 27, 2014; and (3) Defendants Lambart, Jastifer, Byrne, Dereen, and Palmer subjected Plaintiff to unlawful retaliation based on their alleged refusal to provide Plaintiff with appropriate medical care between March 20, 2014, and April 23, 2014.

## II.        Failure to State a Claim

Defendants next argue, in the alternative, that they are entitled to relief on the ground that Plaintiff's allegations fail to state a claim upon which relief may be granted.   As to the claims which have been properly exhausted, the Court partially agrees.

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief.   *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000).   Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).   This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"   *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era,

> but it does not unlock the doors of discovery for a plaintiff armed with
> nothing more than conclusions.   Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss. . .Determining
> whether a complaint states a plausible claim for relief will, as the Court
> of Appeals observed, be a context-specific task that requires the
> reviewing court to draw on its judicial experience and common sense.
> But where the wellpleaded facts do not permit the court to infer more
> than the mere possibility of misconduct, the complaint has alleged - but
> it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein.  *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*, *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

A.    Retaliation

Plaintiff alleges that Defendants Lambart, Jastifer, Byrne, Dereen, and Palmer retaliated against him by refusing to provide him with appropriate medical treatment.   The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary

firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct.    *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

With respect to causation, courts recognize that retaliation is easy to allege and "is often very difficult to prove with direct evidence."    *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken.    *Thaddeus-X*, 175 F.3d at 399 (citations omitted).    Conclusory allegations of retaliatory motive are insufficient, however.    *See Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004).    Instead, Plaintiff must, at a minimum, allege a chronology of events from which retaliation can plausibly be inferred.    *See Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004).

In his complaint, Plaintiff alleges that Defendants refused to provide him with appropriate medical treatment, but then simply states in conclusory fashion that such was the product of retaliatory animus.    However, Plaintiff has altogether failed to allege facts from which a reasonable person could conclude that Plaintiff's protected conducted in any way motivated Defendants' allegedly improper conduct.    In short, Plaintiff fails to allege a chronology of events from which retaliation can plausibly be inferred, but instead advances nothing more than bare allegations of malice. Accordingly, the undersigned recommends that Plaintiff's retaliation claims against Defendants Lambart, Jastifer, Byrne, Dereen, and Palmer be dismissed for failure to state a claim.

-13-

B.    Denial of Medical Treatment

Plaintiff alleges that Defendant Jastifer failed to provide him with constitutionally adequate medical treatment when she examined him on March 27, 2014.   The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs."   *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps.   First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. When evaluating the objective prong of this analysis, the Court must first determine whether the alleged injury or medical need is "obvious," i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004); *see also, Cain v. Irvin*, 286 Fed. Appx. 920, 927 (6th Cir., July 17, 2008).   If the injury or medical need is obvious, the question becomes whether the plaintiff received treatment "within a reasonable time."   *See Blackmore*, 390 F.3d at 899-900 (where the plaintiff's injury or medical need is obvious, he satisfies the objective prong of the analysis by demonstrating that "he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame").   If, on the other hand, the injury or medical need is not obvious, the plaintiff must

submit "medical evidence" demonstrating that the delay or denial of treatment "resulted in additional injury."  *Id.*

If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it."  *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that Plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment.  *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

-15-

In his complaint, Plaintiff acknowledges that Defendant Jastifer examined him on the date in question and provided him with medication.   While Plaintiff clearly believes that Defendant Jastifer was negligent or misdiagnosed his condition, such allegations do not implicate the Eighth Amendment.   Instead, Plaintiff's allegations in this regard implicate state negligence and/or medical malpractice law.   Accordingly, the undersigned recommends that Plaintiff's claim that Defendant Jastifer subjected him to cruel and unusual punishment be dismissed for failure to state a claim.

## III.        Qualified Immunity

As described herein, the only claim asserted in Plaintiff's complaint which in the Court's estimation is both properly exhausted and states a claim on which relief may be granted is Plaintiff's claim that Defendants Palmer, Skipper, and Reed violated his Eighth Amendment rights by failing to install a ladder on his bed.   As to this claim, Defendants assert that they are entitled to qualified immunity.   Defendants, however, appear to be attempting to rely on the doctrine of qualified immunity to improperly shift the burden of proof to Plaintiff.

While Defendants are correct that Plaintiff would bear the burden to defeat an appropriate assertion of qualified immunity, *see, e.g., Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015), Defendants have not advanced a legitimate claim of qualified immunity.   Assertions of qualified immunity are appropriate where a defendant argues that the right a plaintiff seeks to enforce was not clearly established or where a defendant asserts that he reasonably believed his actions were lawful under existing law.   Here, Defendants merely assert that they are entitled to relief because, based upon the evidence submitted, there is no factual dispute necessitating a trial on the merits.   In other words, Defendants are simply seeking summary judgment under Federal Rule of Civil Procedure 56, under which Defendants bear the burden to show entitlement to the requested relief.

-16-

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Hadix*, 367 F.3d at 525 (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)). If the objective test is met, the Court must then determine whether Defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, was the individual deliberately indifferent to inmate health or safety. *Id.* However, the Eighth Amendment is not implicated where prison officials simply acted with negligence. *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). In sum, to establish that Defendants acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 829, 847).

Plaintiff's claim fails for two reasons.   First, Plaintiff has failed to present evidence that he required any sort of lower bunk accommodation or suffered any medical condition or malady which impaired or limited his ability to climb into the upper bunk of his bed.   Plaintiff's unsubstantiated assertions of unspecified impairments are insufficient.   Secondly, Plaintiff has failed to present evidence that his bed was inherently unsafe or that compelling him to climb into the upper bunk presented a risk of serious harm.   While Plaintiff may have preferred that prison officials provide him with a separate ladder, the Constitution hardly requires such.   Defendants have submitted evidence that the end of Plaintiff's bunkbed was "constructed like a ladder" to facilitate climbing. (ECF No. 51-6 at PageID.424).   Plaintiff has not submitted evidence refuting this assertion, but instead has submitted a drawing of his bed confirming such.   (ECF No. 67-1 at PageID.556). Defendants have also submitted evidence that Plaintiff was provided with a chair to facilitate climbing into the upper bunk.   (ECF No. 51-6 at PageID.424).   Plaintiff concedes that he was provided with such a chair, but alleges that such was insufficient.   Plaintiff has submitted affidavits from other prisoners who assert that the chairs they were provided were "flimsy" and "lightweight."   (ECF No. 67-1 at PageID.548-55).   While the chairs in question may not have been the optimal solution to the problem at hand, this evidence hardly establishes that Plaintiff is suffering an "extreme deprivation" which deprives him of the "minimal civilized measure of life's necessities."   Accordingly, the undersigned recommends that Defendants Palmer, Skipper, and Reed are entitled to summary judgment as to this claim.

**IV.        State Claims**

Plaintiff also asserts numerous state law claims.   Pursuant to 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a state law claim if it "has

dismissed all claims over which it has original jurisdiction."   Indeed, "if the federal claims are dismissed before trial. . .the state claims should be dismissed as well."   *Taylor v. First of America Bank - Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also*, *Bah v. Attorney General of the State of Tennessee*, 610 Fed. Appx. 547, 555 (6th Cir., May 8, 2015) (same).   Accordingly, the undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's state law claims and instead dismiss such without prejudice so that Plaintiff may pursue such in the appropriate state forum.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 50), be **granted** and this action **dismissed**.   The undersigned further recommends that appeal of this matter would not be taken in good faith.   *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Dated: November 6, 2018                           /s/ Ellen S. Carmody
                                                  ELLEN S. CARMODY
                                                  United States Magistrate Judge